UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CAPTAIN D'S, LLC,

Plaintiff

v. Civil Action No. 2:06-0261

CARLTON MCCLENATHAN,

Defendant

MEMORANDUM OPINION AND ORDER

Pending before the court is the petition of the plaintiff, filed April 6, 2006, seeking to compel arbitration and to stay state court proceedings.[1]

I.

Captain D's, LLC ("Captain D's") operates a chain of seafood restaurants, including restaurants located in Kanawha County, West Virginia. (Pl.'s Memo. at 2). Carlton McClenathan was employed at two Captain D's restaurants in Kanawha County from February 20, 1989, to August 19, 2005. (Id.) Beginning on

[1] Also pending before the court is the parties' joint motion, filed October 17, 2006, seeking expedited consideration of Captain D's petition to compel and stay state court proceedings, which motion is denied as moot in view of the within opinion and order.

April 10, 1989, through the date of his termination, McClenathan held the position of General Manager.[2] (Id.) As a General Manager, McClenathan was responsible for the entire operation of the restaurant, including the management and supervision of all the employees who worked at the restaurant. (Id.)

Effective December 1, 2003, Captain D's implemented its Employee Dispute Resolution ("EDR") Plan, which applies to all Captain D's employees. (Id.) The EDR Plan provides a three-step process for the resolution of claims arising from the employment relationship: (1) use of Captain D's internal complaint procedures; (2) mediation; and (3) arbitration before an arbitrator selected by the American Arbitration Association. (Id.; EDR Plan at pgs. 17-19, attached as Ex. 2 to Pl.'s Memo. )

In connection with the implementation of the EDR Plan, in December of 2003, Captain D's conducted a series of meetings with employees to "roll-out the EDR Plan." (Whitley Aff. at ¶ 7.). During the course of these meetings, the details of the EDR Plan were explained and the employees were provided with the

---

[2] McClenathan served as the General Manager of the Captain D's in St. Albans, West Virginia from April 10, 1989, through July 31, 1994. From August 1, 1994, through the date of his termination, McClenathan served as General Manager of the Captain D's in Dunbar, West Virginia. (Whit. Aff. at ¶ 4, attached as Ex. 1 to Pl.'s Memo.)

opportunity to ask questions. (Id. at ¶ 8.) McClenathan attended one of those meetings. (Id. at ¶ 7.) Also, copies of the EDR Plan and the EDR Plan Agreement ("EDR Agreement") were distributed. (Id.) McClenathan was instructed to take the documents home, review them, and, if he agreed to the terms of the EDR Plan, to sign the EDR Agreement and return it within seven days. (Id.) McClenathan was further instructed that signing the EDR Agreement and agreeing to the terms of the EDR Plan was a condition of his continued employment with Captain D's. (Id.)

On December 11, 2003, McClenathan signed and returned the EDR Agreement. The one-page EDR Agreement provides in pertinent part

> Except as set forth below, both Captain D's and I agree to settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application for employment, employment and/or cessation of employment with Captain D's, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendment of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, the law of contract and the law of tort.
>
> I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my

> application for employment, employment, or cessations [sic] of employment, Captain D's may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use arbitration . . .
>
> I understand that neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Captain D's and me. I further understand that my signature to this Agreement in no way guarantees that Captain D's will offer me employment. If Captain D's does offer me employment and I become employed at Captain D's, this Agreement in no way alters the "at-will" status of my employment. I understand that my employment, compensation and terms and conditions of my employment can be altered or terminated, with or without cause, and with or without notice, at any time, at the option of Captain D's or myself. I understand that no General Manager, other store manager, or representative of Captain D's , other than an Officer of Captain D's at the level of Vice-President or above, has any authority to enter into any agreement for employment for any specific duration, to make any agreement contrary to the foregoing or to alter the Captain D's Employment Dispute Resolution Plan.

(EDR Agreement, attached as Ex. 3 to Pl.'s Memo; Whitley Aff. at ¶ 9.) Thereafter, it was McClenathan's responsibility, as a General Manager, to implement the EDR Plan at the restaurant he managed. (Whitley Aff. at ¶ 10.)

In August of 2005, McClenathan was discharged from employment. (Whitley Aff. at ¶ 4.) According to Captain D's, McClenathan repeatedly engaged in violations of company policy. (Id.) On February 16, 2006, McClenathan instituted an action in

the circuit court of Kanawha County, West Virginia against Captain D's and Gilbert Whitley, a Captain D's employee responsible for supervising a number of West Virginia restaurants. (Pl.'s Memo. at 3-4; Whitley Aff. at ¶ 2.) In the state court action, McClenathan alleges he was terminated based on his age in violation of the West Virginia Human Rights Act. (Pl.'s Memo. at 4; Def.'s Resp. Memo. at 1.)

Captain D's instituted this action seeking to compel arbitration and to stay the state court proceedings or, in the alternative, to enjoin McClenathan from pursuing his claims in the state court action. In its complaint Captain D's further seeks its costs, attorneys' fees, and interest thereon, but its petition and supporting memoranda are silent with respect to this additional request for relief.

II.

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Court of Appeals for the Fourth Circuit has observed that a "party can compel arbitration if it establishes

'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" American General Life and Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (internal citations omitted). In considering these factors, a district court must be "mindful of the 'clear federal directive in support of arbitration.'" Id. at 500 (citation omitted).

While federal law governs the arbitrability of disputes under the FAA, ordinary state law principles resolve issues regarding the formation of contracts. Id. at 87 (internal citations omitted). Generally, contract defenses such as fraud, duress or unconscionability may be applied to invalidate arbitration agreements without contravening Section 2 of the FAA. Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681 (1996)). As the defendant is challenging the enforceability of the agreement, the court applies West Virginia contract law to determine the validity of the arbitration agreement. See Wood, 429 F.3d at 90 (applying West Virginia contract law to determine the enforceability of an agreement to arbitrate, but noting that

federal courts are not bound by West Virginia law to the extent it "fashion[s] a broad prohibition against arbitrability of state-law claims").

III.

Captain D's maintains, in essence, that the court should compel arbitration of McClenathan's claims because the EDR Agreement is enforceable under the FAA. McClenathan responds contending that (1) a valid arbitration agreement does not exist between the parties; (2) the question of the validity of the arbitration agreement should be determined by a jury; and (3) to the extent that there is any agreement, it fails for lack of mutuality.

Before turning to McClenathan's arguments, the court first observes that it is quite plain from the record that there is an arbitration agreement between McClenathan and Captain D's. McClenathan does not dispute Captain D's recitation of the facts which indicate that McClenathan (1) attended a meeting where the EDR Plan was explained; (2) subsequently received and signed the EDR Agreement; (3) continued to work at Captain D's for nearly two years after signing the EDR Agreement; and (4) implemented the EDR Plan in the restaurant that he managed. Nonetheless, the

court will address each of McClenathan's arguments in turn.

A. Validity of Arbitration Agreement

With respect to the validity of the EDR Agreement, McClenathan cites the portion of the agreement which provides, "neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Captain D's and me." According to McClenathan, the document by its own terms states that it is not a contract, so there is no contract to enforce.

Contrary to plaintiff's suggestion, Captain D's is not alleging that it had an employment contract with McClenathan; rather, it is asserting that it has an arbitration contract with McClenathan. The fact that the EDR Agreement indicates that it does not alter McClenathan's at-will employment relationship with Captain D's does not mean that the agreement to arbitrate is somehow unenforceable. Indeed, our court of appeals has enforced an agreement to arbitrate that contained similar language. See Microstrategy, Inc. v. Lauricia, 268 F.3d 244, 248-49 (4th Cir. 2001)(observing that arbitration agreement and employment contract are distinct and concluding that arbitration agreement was valid and binding where the agreement provided that "I

[employee] acknowledge that the policies and practices set out in this Handbook are not a contract of employment, and are not intended to imply a contractual relationship").

McClenathan also contends that the terms of the agreement reflect the absence of mutuality of assent. His contentions appear to be based on the fact that he was not given indefinite employment in exchange for signing the EDR Agreement. In support, McClenathan cites only general contract principles.

This argument can be disposed of summarily inasmuch as it is well established that an employer's agreement to be bound by the arbitration process constitutes sufficient consideration to support an agreement to arbitrate an employee's claims. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002)("'[N]o consideration [is required] above and beyond the agreement to be bound by the arbitration process' for any claims brought by the employee")(internal citation omitted); see also O'Neill v. Hilton Head Hosp., 115 F.3d 272, 275 (4th Cir. 1997)(concluding that adequate consideration was present inasmuch as both parties promised to be bound by the arbitration process and results and further noting that the court need not address employer's argument that the employee's continued employment constituted valid consideration). Here, the EDR Agreement

unambiguously provides that "Captain D's and I agree to settle any and all previously unasserted claims, disputes, or controversies . . . by final and binding arbitration before a neutral Arbitrator." (EDR Agreement, attached as Ex. 3 to Pl.'s Memo.) This plain language demonstrates Captain D's intent to be bound by the arbitration process. Accordingly, sufficient consideration exists to support the agreement to arbitrate.[3]

B. Determination of the Existence of a Contract

McClenathan next contends that the issue of whether a contract exists is for the jury to decide. Again McClenathan cites only general contract principles in support of his position. Our court of appeals has dismissed this argument as well. In Johnson v. Circuit Stores, Inc., 148 f.3d 373 (4th Cir. 1998), the Fourth Circuit observed that "[w]hether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." at 377. Consequently, the issues raised by McClenathan in his response

---

[3] In his response memorandum, McClenathan references "the doctrine of mutual mistake." (Pl.'s Memo. at 2.) His discussion in the following sentence makes reference to "mutuality of assent." McClenathan has not identified, nor does the court find, any mistake either party made with respect to their understanding of the facts underlying the arbitration agreement. Thus, to the extent that such an argument is being asserted, the court need not address it.

memorandum are appropriately resolved by the court.

C. Mutuality of Remedies

Finally, in the event that the court does find a contract existed, McClenathan asserts that it would fail for lack of mutuality of remedies. In support, McClenathan cites Section 4C of the EDR Plan, which states

> Notwithstanding anything to the contrary in this Plan, this Plan does not apply to (i) Employees' claims for workers' compensation benefits or claims for unemployment compensation benefits, or (ii) any claims by the Company for equitable relief, including, but not limited to, allegations of trade secret violations, breach of the duty of loyalty, and breach of noncompetition provisions and agreements. Further, nothing herein is intended or will operate to affect the exclusive remedies provided under the applicable workers' compensation statute.

According to McClenathan, this provision exempts "any claim that the employer could have against an employee."

While it is true that under the terms of the EDR Plan Captain D's need not submit its equitable claims against McClenathan to arbitration, this does not render the arbitration agreement invalid. Contrary to McClenthan's contention, a claim for equitable relief is not the only type of claim Captain D's could assert against McClenathan inasmuch as Captain D's could have a claim seeking monetary relief. It is also worthy of

mention that the terms of the EDR Plan also except from arbitration certain claims that McClenathan might assert, such as those seeking workers' compensation or unemployment benefits.

In any event, as the court has already observed, to satisfy the mutuality requirement, the parties need only be mutually bound by the arbitration process. The parties are not required to arbitrate every type of dispute that may arise out of their relationship. Courts that have addressed the question have declined to invalidate an arbitration agreement which excepts from arbitration an employer's claim for equitable relief. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005)(dismissing employee's argument that the arbitration agreement failed for lack of mutuality where employer could bring a judicial action for trademark, trade secret, and noncompetition claims and finding that "[t]he promises are mutual: both parties are required to arbitrate covered claims, and neither is required to arbitrate non-covered claims"); see also Raasch v. NCR Corp., 254 F. Supp.2d 847, 856-57 (S.D. Ohio 2003)(agreement to arbitrate did not fail for lack of mutuality where employer was not required to submit to arbitration "disputes over confidentiality/ non-compete agreements or intellectual property rights").

Furthermore, although McClenathan has made his arguments

in the context of a discussion regarding the enforceability of the arbitration agreement, it appears that the thrust of his argument is that the exception of Captain D's equitable claims from arbitration renders the agreement unconscionable. To the extent that such an argument is being asserted, the court finds, as a matter of law, that the exception from arbitration of equitable claims by Captain D's is not so inherently unfair and one-sided as to render the arbitration agreement unenforceable on unconscionability grounds.

D. Enforceability of the EDR Agreement

Plaintiff has failed to set forth any grounds which would otherwise invalidate the EDR Agreement and Captain D's has demonstrated the existence of a valid arbitration agreement. As earlier noted, Wood directs that a party can compel arbitration if it establishes (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute. 429 F.3d at 87.

Turning to the first requirement, Captain D's has shown

there is a dispute with McClenathan, as evidenced by McClenathan's filing of a complaint in West Virginia state circuit court alleging that McClenathan was impermissibly terminated because of his age. Second, as demonstrated by the undisputed facts of this case, the plain language of the EDR Agreement reveals a valid, written arbitration agreement that covers this dispute. Third, it appears to be undisputed that Captain D's operations involve a nexus with interstate commerce sufficient to bring the EDR Agreement within the Commerce Clause. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118-121 (2001)(interstate commerce requirement satisfied, noting that "[i]t would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA . . ."). Finally, McClenathan has failed to arbitrate the dispute as he has instead instituted a discrimination suit in state court and opposed the motion to compel. In view of the foregoing, the court finds that the criteria articulated by our court of appeals in Wood has been met and Captain D's motion to compel should be granted.

E. Stay of State Court Proceeding

In addition to seeking to compel arbitration of McClenathan's claims, Captain D's also seeks a stay of the pending state court proceedings or, in the alternative, to enjoin

McClenathan from pursuing his claims in the state court action. McClenathan has not addressed this request in his response memorandum.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Under the FAA "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

While a court, under the FAA, is obligated to compel arbitration, there is no provision in the FAA expressly authorizing a federal court to stay pending state court proceedings. See Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 893-94 (6th Cir. 2002)(acknowledging that while the FAA mandates that courts stay proceedings before it where the issues to be litigated are subject to an arbitration agreement, the FAA "'does not specifically authorize federal courts to stay proceedings pending in state courts.'")(internal citations

omitted).

Captain D's has not provided, nor has the court found, any authority from our court of appeals specifically addressing the ability of a district court to grant a stay of state court proceedings in conjunction with granting a motion to compel arbitration. Moreover, this court has, on at least two separate occasions, granted a motion to compel arbitration but declined to grant the companion motion to stay the state court proceedings. See United Service Protection Corp. v. Lowe, 354 F. Supp.2d 651, 659 (S.D. W. Va. 2005)(Goodwin, J.)(observing that the "FAA provides no independent authority for enjoining parallel state court proceedings" and an extreme situation warranting an injunction was not present); Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Coe, 313 F. Supp.2d 603, 616 (S.D. W. Va. 2004) (Faber, C.J.)(reserving the right to entertain a motion for a stay order, but stating that "it does not appear that a stay directed at the court hearing the state court actions is necessary to protect or effectuate the court's judgment" inasmuch as "the parties and the [state circuit court] will likely conform their conduct to the expectations of law."). Nevertheless, this court has granted an employer's motion to compel arbitration and simultaneously enjoined an employee from pursuing his claims in

state court. American General Life and Acc. Ins. Co. v. Wood, CA No. 2:01-0673, September 3, 2004, Order at pgs. 28-37 (S.D. W. Va.)(Copenhaver, J.), aff'd on other grounds, 429 F.3d 83 (4th Cir. 2005).

Because the parties and the state circuit court can be expected to adhere to governing principles of law, the court finds a stay of the state court proceedings is unwarranted. Captain D's may renew its request for a stay should it become necessary.

F. Captain D's Request for Attorney Fees and Costs

Addressing Captain D's request for attorney fees, costs and interest, the court finds no provision for such a request in the EDR Plan or EDR Agreement. Indeed, it is not clear from the record that Captain D's is pursuing this request and the documents before the court suggest that Captain D's, which has not provided any legal authority or argument in support of the request, has abandoned it. Accordingly, the request is denied.

IV.

For the foregoing reasons, it is ORDERED that Captain D's petition to compel arbitration and to stay state court proceedings be, and it hereby is, granted only to the extent it

seeks to compel arbitration and is otherwise denied without prejudice.

It is further ORDERED that defendant Carlton McClenathan and plaintiff Captain D's submit to arbitration the claims raised in the pending state court action in accordance with the terms of the parties' agreement.

The Clerk is directed to forward copies of this order to all counsel of record and to the Clerk of the Circuit Court of Kanawha County.

DATED: November 27, 2006

John T. Copenhaver, Jr.
United States District Judge